# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 5, 2026

Lyle W. Cayce
Clerk

No. 25-30114

Bilal Hankins,

*Plaintiff—Appellant*,

*versus*

Tyrone Martin; Demetrius Jackson; Tommy Mercadal;
Leontine Mullins,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
Civil Action No. 2:21-CV-1129

_____

Before Elrod, *Chief Judge*, and Smith and Wilson, *Circuit Judges*.

Per Curiam:[*]

Following a traffic stop by two off-duty police officers on a private security detail, Plaintiff Bilal Hankins sued the officers, the officers' employers, and the officers' supervisors. Hankins alleged unlawful seizure and excessive force claims against the officers under 42 U.S.C. § 1983, *Monell* liability claims against the employers, and § 1983 supervisory claims against

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

the supervisors, as well as state law claims. This appeal concerns the qualified immunity of the police supervisors of one of the officers. The district court granted them summary judgment, concluding that Hankins had failed to rebut the supervisors' defense of qualified immunity on each claim against them. We affirm.

## I.

In June 2020, Bilal Hankins was searching for his neighbor's lost dog. Hankins, then eighteen years old, was joined in the search by Tahj Pierre, a friend visiting from college, and L.M., the neighbor's minor nephew. Pierre drove the trio slowly through their neighborhood in his BMW as Hankins and L.M. leaned out of the window to call for the dog. After a few blocks, the group noticed Kevin Wheeler, an off-duty officer of the Orleans Levee District Police Department (OLD-PD). At the time, Wheeler was working for the Hurstville Security and Neighborhood Improvement District (Hurstville), a private entity that hires off-duty police officers to patrol the neighborhood. Hankins's group pulled alongside Wheeler's marked police car and asked if he had seen the dog. Wheeler replied that he had not, and after providing more details about the dog and their search, Hankins and his companions rode on.

Wheeler suspected that the group was planning to break into cars in the neighborhood and, after running the plates, discovered that the BMW was registered to an address fifteen miles away. Wheeler began tailing the group and called Officer Ramon Pierre for backup. Pierre was a police officer for the Housing Authority of New Orleans (HANO) and, like Wheeler, he was working that night as a private patrolman for Hurstville. Together, Pierre and Wheeler pulled the group over, and Wheeler asked them some further questions. After checking Tahj Pierre's license, Wheeler told the group that he had been suspicious of "three young men, in a nice car, in this

neighborhood." While the parties contest some details of the stop, such as Wheeler's comments to the group and whether the officers displayed their weapons, it is undisputed that the stop was brief, that Hankins remained in the vehicle, and that no physical force was used.

In June 2021, Hankins initiated this action, alleging claims under § 1983 for unlawful seizure and excessive force against Wheeler and Pierre, as well as § 1983 claims against the officers' supervisors. Hankins further alleged *Monell* liability[1] claims against Hurstville, HANO, and the Southeast Louisiana Flood Protection Authority (the parent entity of OLD-PD). Hankins also alleged state law claims, including negligent infliction of emotional distress and negligent hiring, against various defendants.

In September 2023, the district court granted summary judgment to all defendants on Hankins's federal claims, concluding that Hankins had failed to allege a constitutional violation. This court reversed, holding that "material fact disputes" remained on the question of the officers' reasonable suspicion, and remanded for further proceedings. *Hankins v. Wheeler*, 109 F.4th 839, 846 (5th Cir. 2024).

On remand, the four officers at HANO who supervised Pierre filed a renewed motion for summary judgment as to the three § 1983 claims Hankins alleged against them: failure to supervise Pierre on his private detail; failure to train Pierre; and failure to discipline Pierre. HANO did not join their motion. The only question before the district court was whether the supervisors were entitled to qualified immunity.

The court decided they were and granted summary judgment. While presuming that Hankins had sufficiently alleged a violation of a clearly

---

[1] *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

No. 25-30114

established right, the district court concluded that Hankins had not demonstrated that the supervisors' actions were objectively unreasonable. Hankins now appeals.[2]

## II.

"We review *de novo* the district court's grant of summary judgment based on qualified immunity." *Stidham v. Tex. Comm'n on Priv. Sec.*, 418 F.3d 486, 490 (5th Cir. 2005). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, an officer invokes qualified immunity, that "alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available," *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020) (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)):

> As is normal for summary judgment, the plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury. However, unique to the qualified immunity context, to overcome qualified immunity, the plaintiff's version of those disputed facts must also constitute a violation of clearly established law.

*Spiller v. Harris Cnty.*, 113 F.4th 573, 576 (5th Cir. 2024) (internal brackets, citations, and quotation marks omitted) (quoting *Joseph*, 981 F.3d at 330).

---

[2] The district court directed entry of final judgment on its partial grant of summary judgment to the supervisors, making the judgment appealable. *See* Fed. R. Civ. P. 54(b); *Elizondo v. Green*, 671 F.3d 506, 509–10 (5th Cir. 2012).

No. 25-30114

## III.

Under § 1983, "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Hicks v. LeBlanc*, 81 F.4th 497, 504 (5th Cir. 2023) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A "supervisory official may be held directly liable 'only if he affirmatively participates in the acts that cause the constitutional deprivation.'" *Id.* at 504–05 (quoting *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)). To overcome the defense of qualified immunity under § 1983, Hankins must establish that the supervisors' conduct was not "objectively reasonable under clearly established law at the time the conduct occurred." *Hampton v. Oktibbeha Cnty. Sheriff's Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). A constitutional right is clearly established for qualified immunity purposes where "the contours of the right in question are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Crane v. City of Arlington*, 50 F.4th 453, 466 (5th Cir. 2022) (internal quotation marks omitted).

## A.

We turn first to Hankins's failure-to-supervise claim. A "supervisory official may be held liable . . . for the wrongful acts of a subordinate when the supervisory official breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury." *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023) (internal brackets and quotation marks omitted). If such a duty existed, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotation marks omitted).

No. 25-30114

It is undisputed that the HANO supervisors did not supervise Pierre on private details. But as the district court observed, Louisiana law does not impose any duty to do so. The state law empowering HANO to appoint police officers does not communicate such a duty. *See* La. Rev. Stat. § 40:456. And Louisiana courts have consistently held that off-duty officers are employees of the company paying for the detail. *See, e.g.*, *Brasseaux v. Town of Mamou*, 99-1584 (La. 1/19/00), 752 So. 2d 815, 820 (A municipal employer "will not be liable for the substandard conduct of the [officer] unless the latter can be fairly said to be within the course and scope of his employment[.]"); *Wright v. Skate Country, Inc.*, 98-0217 (La. App. 4 Cir. 5/12/99), 734 So. 2d 874, 881 (collecting cases). Put briefly, no Louisiana law clearly established a duty of HANO supervisors to supervise Pierre during his private details.[3]

Hankins grounds his claim on the HANO Police Department Operations Manual, which provides "guidelines for the working of paid details by department employees." Hankins notes that the Manual describes HANO's responsibility for reviewing and approving private details for officers and points to the requirement that officers continue to "be governed by all Department rules, orders, and procedures" while on paid details. From

_____

[3] Alternatively, Hankins argues that Pierre was within the scope of his employment as a police officer during the detail. However, Louisiana courts have held that officers in similar circumstances were private employees while working paid details. *See Duryea v. Handy*, 96-1018 (La. App. 4 Cir. 10/3/97), 700 So. 2d 1123, 1127–28 (city not liable for an officer working private parade security); *Luccia v. Cummings*, 94-416 (La. App. 5 Cir. 11/16/94), 646 So. 2d 1142, 1144 (city not liable for a uniformed officer working as a bouncer). Given this precedent, Hankins fails to show the supervisors' conduct was objectively unreasonable. And we may hold that the officers are entitled to qualified immunity without definitively deciding whether Pierre acted in the scope of his employment, a question of state law. *See LeBrane v. Lewis*, 292 So. 2d 216 (La. 1974).

this, Hankins asserts that the Manual implies a duty to supervise Pierre on his paid details.

The district court rejected this argument, relying on *Powers v. United States*, 783 F.3d 570 (5th Cir. 2015). In *Powers*, this court held that a New Orleans police officer, though still "governed by all Department rules, orders and procedures," was no longer a public employee for wage-setting purposes during his private details. *Id.* at 582–83. Hankins suggests that *Powers* is irrelevant because HANO uses a different manual, or that the decision, in recognizing the city's power to regulate private details, "implies" a duty to supervise officers during those details.

Not so. The district court recognized, as *Powers* confirms, that the text of the HANO manual did not imply a duty to supervise Pierre's private details. In fact, the record reflects that Hurstville took responsibility for his supervision and appointed its own officer to oversee him, facts Hankins acknowledges. Because there was no duty to supervise Pierre on his private details, the HANO supervisors' conduct was not objectively unreasonable, and they were thus entitled to qualified immunity.

But even if the supervisors had breached a duty to supervise Pierre, they would still be entitled to qualified immunity. To overcome immunity, Hankins must show the supervisors' conduct was objectively unreasonable in light of clearly established law, which here includes the requirement that supervisors not be "deliberately indifferent" to violation of his rights.[4]

_____

[4] As our court has explained, "the analysis for objective reasonableness is different from that for deliberate indifference. Otherwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine." *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998). However, "the subjective deliberate indifference standard serves . . . to demonstrate the clearly established law in effect at the time of the incident." *Id.*

*Goodman*, 571 F.3d at 395. "[D]eliberate indifference is a stringent standard of fault." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted). It is not "inept, erroneous, ineffective, or negligent" conduct, but rather "more than negligence or even gross negligence." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 379 (5th Cir. 2005). Typically, officials must consciously ignore "objective exposure to a substantial risk of serious harm." *Damond v. City of Rayville*, 127 F.4th 935, 940 (5th Cir. 2025).

Hankins urges that the supervisors were deliberately indifferent to the harm Pierre might cause if unsupervised, but he offers only vague complaints of "misconduct" and "antagonistic" behavior, citing no actions by Pierre that would have alerted HANO to a "substantial risk of serious harm." *Damond*, 127 F.4th at 940. Hankins draws on *Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015), to argue that no specific evidence indicating a risk of harm is necessary. But our court straightforwardly requires plaintiffs to show that a defendant was aware of facts indicating a substantial risk of serious harm. *See Pinkston v. Kuiper*, 67 F.4th 237, 241 (5th Cir. 2023) (citing *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019)). In no way does *Ball* relax this requirement. *See* 792 F.3d at 593–94 (merely restating precedent holding that evidence of prior harm is unnecessary for prison officials to be aware of the risk that certain prison conditions could harm inmates). And Hankins provides insufficient evidence to meet it.

In sum, Pierre's HANO supervisors had no duty to supervise his private details, and any failure to supervise was not objectively unreasonable in any event. The supervisors were therefore entitled to qualified immunity, and summary judgment was appropriate.

**B.**

Hankins also alleges that the HANO supervisors failed properly to train Pierre. There is no dispute that his supervisors had a duty to do so. To succeed on a § 1983 claim for failure to train, Hankins must show that (1) the supervisors failed to train Pierre, (2) a causal link exists between this lapse and the violation of Hankins's rights, and (3) the failure to train amounted to deliberate indifference. *Porter*, 659 F.3d at 446. To rebut the defense of qualified immunity, Hankins must show the supervisors' failure to train was objectively unreasonable. *See Thompson v. Upshur Cnty.*, 245 F.3d 447, 460 (5th Cir. 2001). "[F]or liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (internal quotation marks omitted).

Defeating qualified immunity in this case requires Hankins to show that the supervisors knew of "a pattern of similar violations arising from training or supervising that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008) (internal quotation marks omitted). Hankins provides little to substantiate any such obvious risk. He repeats allegations that Pierre was "insubordinate" and "discourteous" with superiors, and he points to undefined "complaints" about Pierre's conduct during stops. But Hankins does not proffer any behavior by Pierre that is even "fairly similar to what ultimately transpired," that is, the unlawful seizure and excessive force that Hankins alleges. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Hankins thus fails to demonstrate that the HANO supervisors' training of Pierre was objectively unreasonable.

Alternatively, Hankins urges us to adopt a theory of "single incident liability." He offers that "specific areas of inadequate training" may indicate

deliberate indifference based on a single incident of misconduct.  *See Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 627 (5th Cir. 2018) (single-incident liability applied when an unconstitutional search resulted from staff having had no Fourth Amendment training).  Hankins asserts that because Pierre had no training on "racial profiling, reasonable suspicion, and legal stops," the unconstitutional stop at the core of this case was the "highly predictable consequence."

True enough, in certain cases, plaintiffs "may establish deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003); *see also Brown v. Bryan Cnty.*, 219 F.3d 450, 459 (5th Cir. 2000).  But the district court correctly rejected this argument.

Single-incident liability "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 483 (5th Cir. 2021) (internal quotation marks omitted).  Hankins also may not manufacture a failure-to-train claim based on his own particular injury. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)) ("Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim.").  Here, Pierre had completed all training required by state law, including instruction on use of force, search and seizure, and firearm use.  And Pierre had completed state-required training that included instruction on "de-escalation, bias policing recognition, sudden in-custody death, and crisis intervention training." La. Rev. Stat. § 40:2404.2(c).

Plainly, Pierre's training was not so deficient that the risks alleged by Hankins could have been obvious.  It follows that the supervisors' conduct

was not objectively unreasonable. Summary judgment on the basis of qualified immunity was therefore proper.

## C.

Hankins last alleges that the constitutional violations he suffered arose from Pierre's supervisors' failure to discipline him. To establish their liability under this theory, Hankins must demonstrate that (1) the supervisors failed to discipline Pierre, (2) that failure to discipline amounted to deliberate indifference, and (3) failure to discipline directly caused the constitutional violations in question. *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009). As with his other claims, to rebut qualified immunity, Hankins must show that the supervisors' actions were objectively unreasonable. *Hampton*, 480 F.3d at 363.

Hankins suggests the "cursory" investigation of the incident by HANO and a "pattern" of failures to discipline Pierre before the incident spawned a "culture of impunity" that emboldened Pierre to violate Hankins's rights. This assertion fails. First, as the district court observed, investigation of the incident after the fact cannot be a cause of the constitutional violation that preceded it. *See Deville*, 567 F.3d at 171. Moreover, as already described, any misconduct or insubordination by Pierre prior to June 2020 does not resemble the harm Hankins alleges. Hankins thus has not established any deliberate indifference or "causal link between the failure to discipline and the violation of [his] rights." *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024) (citing *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023)), *cert. denied*, 145 S. Ct. 772 (2024). Accordingly, the supervisors' discipline of Pierre was not objectively unreasonable, and summary judgment was appropriate.

\* \* \*

No. 25-30114

Hankins fails to show that Pierre's supervisors acted unreasonably in their supervision, training, or discipline of Pierre. Thus, the supervisors were entitled to qualified immunity on Hankins's claims against them. The judgment of the district court is

AFFIRMED.